UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DERRICK CROSBY and
ERIC LEWIS,

                    Plaintiffs,                                 Case Number 21-11635

v.                                                   Honorable David M. Lawson

HEIDI E. WASHINGTON,
GARY MINIARD, and
GEORGE STEPHENSON,

                    Defendants.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND DENYING MOTIONS TO STAY DISCOVERY AND ENLARGE THE DISCOVERY PERIOD

The plaintiffs, two prisoners in the custody of the Michigan Department of Corrections, filed a complaint alleging that the MDOC has adopted a policy that interferes with their access to counsel in pending criminal cases that are unrelated to their current incarceration. That policy does not allow prisoner's and counsel's access to Zoom videoconferencing technology for consultation with counsel on pending criminal matters. However, the MDOC does permit such Zoom access to convicted prisoners represented by public defenders. The plaintiffs allege that MDOC's Zoom policies violate their right to due process by depriving them of access to counsel. The defendants have moved for judgment on the pleadings, arguing that they are entitled to sovereign immunity and qualified immunity for damages claims against them, and that the plaintiffs do not have standing to bring their claims. They also ask to stay discovery until the motion is decided. The plaintiffs have withdrawn their damages claim and seek only injunctive and declaratory relief against the defendants in their individual capacity. They also have

established the requisites for constitutional standing.  The motion for judgment on the pleadings, therefore, will be denied as to the remaining claims, as will the motion to stay discovery.

I.

According to the complaint, plaintiff Derrick Crosby is a prisoner at the MDOC's Saginaw Correctional Facility.  Plaintiff Eric Lewis is a MDOC prisoner at the Macomb Correctional Facility.  Both plaintiffs are serving sentences, and both have other criminal cases pending in Michigan courts.  They both allege that their respective facilities employ policies that deprive them of Zoom technology for the purpose of consulting with their attorneys for trial preparation.  Zoom technology, they explain, permits them to view and discuss evidence simultaneously using a feature known as screen sharing.  The Saginaw facility allows video calls and unmonitored telephone calls with defense counsel, but it does not permit use of Zoom technology to view documents and video evidence to prepare for trials and hearings.  Relevant to this case, it does not provide counsel with a means of sharing video evidence or documents with their clients by sharing their screen.  However, the facility does permit appellate counsel employed by the State Appellate Defender Office to consult with their appellate clients using Zoom technology with its full catalog of features.

Plaintiffs Crosby and Lewis each allege that they sought to confer with their attorneys via Zoom so that their attorneys could review video and photographic evidence with them in advance to prepare for a court hearing.  MDOC officials denied their requests.

The complaint details Crosby's request and MDOC's denial in greater detail.  On May 14, 2021, Crosby's attorney, Dionne Webster-Cox, emailed Tracey Raquepaw at the Saginaw Correctional Facility to request a Zoom meeting with Crosby to show him "hours of videos" in preparation for a hearing.  Raquepaw denied the request.  "We do not allow Zoom meetings with

prisoners and attorneys (we can with courts and SADO attorneys only)," she wrote.  Instead, she

offered to "set up a[n] unmonitored telephone call."

Webster-Cox therefore contacted Michigan's Third Judicial Circuit court on June 1, 2021

to ask for assistance.  Because the MDOC also permitted courts to use Zoom, the court had offered

to allow Webster-Cox to meet with Crosby before the beginning of the hearing.  But Webster-Cox

found this solution to be inadequate, both because it would not allow for advance preparation and

due to the quantity of evidence she wished to view with Crosby.  When the Third Circuit asked

the MDOC if there was any other way for Webster-Cox to meet with Crosby via Zoom, the MDOC

responded that it "does not allow attorneys to meet with inmates over zoom."  Although the

responding official, Paul Channels, also allowed that "[s]ome facilities have new video visiting

available to their inmates" and permit in-person visits "if not under quarantine or outbreak status,"

he also qualified that Webster-Cox would "need to recontact the facility to determine the options

available."

Other MDOC officials confirmed the policy to Webster-Cox.  On June 4, 2021, Saginaw

Record Office Supervisor Kendra Burton provided Webster-Cox with the following information

from Records Administrator Alanna Schnell:

> Video Conference is only allowed through the courts and SADO.  Private attorneys
> at this time can only use telephone, in person visits and now can use video
> visitation.  Facilities do not have the resources at this time to take on scheduling of
> polycom equipment for private attorneys and MDOC leadership has not authorized
> the use of polycom for private attorneys.

Compl., Ex 1, ECF No. 1, PageID.18.  Schnell clarified that private attorneys could schedule video

visits "through GTL," but that such visits "are not confidential."  To utilize non-Zoom video

technology, attorneys would need to "do an initial visit through GTL then follow up with a

confidential telephone conference."  *Ibid.*  Burton nevertheless asked Webster-Cox if she would

like to set up a video visit, noting that "[u]nfortunately" Zoom access "is something that cannot be resolved at a facility level." *Ibid.* Webster-Cox then requested two video meetings, and Burton provided her a link she could use to schedule non-Zoom video sessions. The link did not work, however, because Webster-Cox was not approved in the video visitation system. Neither Burton nor Raquepaw knew how to provide her such approval or themselves had access to the video system. Raquepaw therefore forwarded Webster-Cox's request for non-Zoom video meetings to Assistant Deputy Carolle Walker, reiterating that "attorneys cannot schedule Zoom attorney visits with prisoner clients" and that the non-Zoom video meeting would be monitored. *Ibid.*

The MDOC has established a Policy Directive concerning Prisoners' Access to the Courts, effective April 5, 2021. *See* MDOC Policy Directive 05.03.116, ECF No. 7-5, PageID.72. The policy states that "[p]risoners are permitted to exercise their constitutional right of access to the courts subject to legitimate penological interests." *Ibid.* It thus states that prisoners "shall be allowed visits with an attorney, or representative acting on the attorney's behalf, on official business with the prisoner in accordance with PD 05.03.140 'Prisoner Visiting,'" including visits that "can be conducted without being overheard by staff or other prisoners." *Id.* at ¶ B. Although the policy discusses prisoners' "reasonable telephone access to an attorney," it does not discuss video conferences. *Ibid.*

Crosby and Lewis filed their complaint on July 15, 2021, naming as defendants MDOC Director Heidi Washington, Saginaw Correctional Facility Warden Gary Miniard, and Macomb Correctional Facility Warden George Stephenson in their official capacities. The complaint pleads two counts under 42 U.S.C. § 1983 for "deprivation of right of access to an attorney" in violation of the Fourteenth Amendment right to due process and equal protection, one each as to Crosby and Lewis. It alleges that the lack of access to Zoom to review evidence caused an undue delay in the

plaintiffs' ability to make well-informed decisions whether to proceed to trial or plead guilty.  It also lists two section 1983 claims labeled "Policy," which allege that the MDOC maintained a policy, custom, or practice of violating inmates' rights by denying them access to Zoom technology for meetings with counsel.  In their complaint, the plaintiffs seek compensatory and punitive damages, attorney's fees, and injunctive relief for all claims, so that the defendants will "institute a policy where all inmates have access to their trial attorneys via Zoom technology." *See id.* at ¶ 53, PageID.11.

Following some preliminary motion practice, the defendants filed their motion for judgment on the pleadings on February 18, 2022.  They also filed a motion to stay discovery until the Court rules on its dispositive motion.  In their motion for judgment on the pleadings, the defendants argue that they are entitled to sovereign and qualified immunity because the plaintiffs purport to sue them in their official and individual capacities for money damages.  They acknowledge, however, that their immunity arguments would be moot to the extent that the plaintiffs have waived any claims for damages and the Court dismisses those claims.  In their response and at oral argument, the plaintiffs confirmed that they no longer are seeking money damages; they seek only injunctive relief and attorney's fees.  Therefore, the Court will dismiss the claims for damages and deny the motion for judgment on the pleadings based on the immunity arguments as moot.

The defendants also contend that the plaintiffs lack standing to bring their complaint because they did not suffer any injury in fact and cannot prove causation, because any delays in viewing evidence were due not to MDOC's Zoom policy but to Webster-Cox's failure to avail herself of the multiple alternative means offered by MDOC to review discovery with her clients. The defendants also argue that the plaintiffs improperly added new claims in their response brief

by arguing there for the first time that the defendants violated their procedural due process and

Sixth Amendment rights, and that the right to access an attorney is a fundamental right protected

by the Fourteenth Amendment's Due Process Clause.   These additional claims are not

encompassed in the complaint and the plaintiffs will need to seek leave to amend if they want to

pursue them.  For the purpose of this motion, the Court will focus on the claims pleaded in the

complaint to determine if the plaintiffs have stated adequate facts to establish constitutional

standing.

II.

Federal courts do not sit as a policy review board.  "The power of the federal courts is

limited to hearing actual cases and controversies" involving plaintiffs who have suffered an injury.

*Miller v. City of Wickliffe*, 852 F.3d 497, 502-03 (6th Cir. 2017) (citing U.S. Const. art. III, § 2, cl.

2; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  The plaintiffs must have standing to

bring their claims, which means that they must demonstrate "actual present harm or a significant

possibility of future harm."  *Savage v. Gee*, 665 F.3d 732, 740 (6th Cir. 2012) (quoting *Nat'l Rifle

Ass'n of Am. v. Magaw,* 132 F.3d 272, 279 (6th Cir.1997)).   Article III "[s]tanding is a

jurisdictional requirement," and if "no plaintiff has standing, then the court lacks subject-matter

jurisdiction."  *Tennessee General Assembly v. United States Dep't of State*, 931 F.3d 499, 507 (6th

Cir. 2019).

The "irreducible constitutional minimum of standing" requires a plaintiff to plead facts in

his complaint to show that he suffered an "injury in fact," which is "fairly traceable to the

challenged action of the defendant," and that can be "redressed by a favorable decision."  *Lujan*,

504 U.S. at 561.  "There are two potential theories of injury — 'actual' present injury and

'imminent' future injury."  *Savage*, 665 F.3d at 740 (citation omitted).  The injury must be

"concrete and particularized." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180 (2000). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Ibid*.

The plaintiffs have satisfied these requirements. The complaint alleges that the plaintiffs' Fourteenth Amendment due process and equal protection rights were violated when they were denied Zoom meetings with their attorneys to review video evidence, despite providing convicted inmates such access. It further alleges that the lack of access to video evidence via Zoom injured the plaintiffs by impairing their ability to make an informed decision about whether to plead guilty or proceed to trial. And it alleges that the MDOC defendants continue to violate the Fourteenth Amendment by continuing to provide Zoom access only to post-conviction inmates represented by state appellate counsel.

The plaintiffs' complaint alleges far more than the "hypothetical threat of some future harm"; instead, they allege ongoing injury in the form of the MDOC defendants' continued enforcement of the inequitable Zoom policy. *See, e.g.*, *Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 411 (6th Cir. 2019) (finding standing to pursue prospective relief to prevent the state from analyzing blood samples it was holding for that purpose). At the time the plaintiffs filed their complaint, there was no question that they had suffered past harm — they were denied access to technology that would have allowed them to prepare with counsel for upcoming court hearings — and that future injury was impending because the MDOC defendants clearly have stated an intention to continue their policy to disallow inmates awaiting trial from using Zoom to review evidence with their attorneys. It is not speculative to assert that the MDOC will do what it says and continue to deny the plaintiffs Zoom access.

The complaint also includes facts sufficient to trace the injury to the MDOC defendants. The plaintiffs allege that their attorney sought to review video evidence with them over Zoom and that MDOC officials, citing the challenged Zoom policy, denied their requests.  They plead ample facts demonstrating why the proffered alternatives were inadequate: instead of securely reviewing evidence with his attorney in real time, Crosby's counsel was told that he could either receive evidence in the mail, call his attorney on the phone, or discuss — but not contemporaneously review — evidence with his counsel via an *unsecured* video platform.  *See* Emails, ECF No. 1, PageID.18-21.  And although Crosby's attorney endeavored to use the unsecured video platform, the MDOC emails attached to the complaint suggest that she nevertheless was unable to take advantage of that platform, at least at first.  *Id.* at PageID.25.  Contrary to the defendants' assertion that Webster-Cox or other attorneys refused alternative means to communicate with the plaintiffs, the pleadings show that Webster-Cox made robust efforts to review evidence with her clients, efforts that repeatedly were foiled.

The defendants contend that the plaintiffs did not suffer a constitutional injury and did not adequately develop their arguments for why the other means for reviewing evidence were inadequate.  The plaintiffs' claims may indeed be vulnerable to a showing that MDOC's limitations on Zoom access are "reasonably related to legitimate penological interests" and therefore constitutionally valid.  *See Turner v. Safley*, 482 U.S. 78, 89 (1987).  That argument, however, addresses the merits of the plaintiffs' constitutional claims, not the authority of the Court to hear them.  The defendants did not cite any controlling authority suggesting that the plaintiffs' complaint is inadequate to establish standing as matter of law.  To the contrary, the defendants cited only *Lewis v. Casey*, 518 U.S. 343, 351 (1996), which does not help them, and two unpublished, out-of-circuit district court decisions, one of which does not discuss standing at all.

- 8 -

*See Garcia v. Watts*, 2009 WL 2777085, at \*9 (S.D.N.Y. Sept. 1, 2009) (no standing discussion); *Brown v. Brabazon*, 1998 WL 177612, at \*2 (E.D.N.Y. Apr. 13, 1998) (citing the elements of standing without discussion), *aff'd*, 166 F.3d 1199 (2d Cir. 1998).   Although *Lewis v. Casey* supports the proposition that the plaintiffs ultimately "must set forth by affidavit or other evidence specific facts" demonstrating actual injury in order to prevail on their claims, it also makes clear that, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant[s'] conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lewis*, 518 U.S. at 358 (quoting *Lujan*, 504 U.S. at 561).   Here, the plaintiffs argue that the defendants denied them the "reasonable opportunity to seek and receive the assistance of attorneys" guaranteed by the "due process of law," including the same means of reviewing evidence provided to other inmates.   *See Procunier v. Martinez*, 416 U.S. 396, 419 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401, 410-411 (1989); *see also Griffin v. Illinois*, 351 U.S. 12, 17 (1956) ("Both equal protection and due process emphasize the central aim of our entire judicial system — all people charged with crime must, so far as the law is concerned, 'stand on an equality before the bar of justice in every American court.'" (quoting *Chambers v. Florida*, 309 U.S. 227, 241 (1940))).   At this stage in the proceedings, the plaintiffs' "general allegations . . . suffice[] to claim injury by [the] plaintiffs, and hence standing" in the present case. *Lewis*, 518 U.S. at 357.

Based on the information currently before the Court as presented by the parties, the plaintiffs have established the constitutional requisites for standing and shown that their dispute presents a live controversy under Article III.

III.

The plaintiffs have withdrawn their claims for damages and seek only injunctive and declaratory relief (and attorney's fees). The Court will dismiss the claims for damages, and therefore the defendants' immunity arguments no longer are in play. The plaintiffs also have alleged facts to establish Article III standing. Because the motion for judgment on the pleadings is not decided, the motion to stay discovery in the case is moot.

The plaintiffs also have filed a motion to enlarge the discovery period for 60 days, alleging only that they were not able to complete discovery within the allotted time. However, they have provided no reasons for their inability to do so, and they have not suggested any basis for a finding of good cause, which is necessary to modify a scheduling order. *See* Fed. R Civ. P. 16(b)(4).

Accordingly, it is **ORDERED** that the defendants' motion for judgment on the pleadings (ECF No. 29) is **GRANTED IN PART AND DENIED IN PART**. The plaintiffs' claims for money damages are **DISMISSED WITH PREJUDICE**. The motion is **DENIED** in all other respects.

It is further **ORDERED** that the defendants' motion to stay discovery (ECF No. 30) is **DENIED** as moot.

It is further **ORDERED** that the plaintiffs' motion to enlarge the discovery period (ECF No. 37) is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   July 13, 2022