UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DERRICK CROSBY and
ERIC LEWIS,

        Plaintiffs,                      Case Number 21-11635

v.                                            Honorable David M. Lawson

HEIDI E. WASHINGTON,
GARY MINIARD, and
GEORGE STEPHENSON,

        Defendants.
_____/

## OPINION AND ORDER DISMISSING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DISMISSING CASE AS MOOT

During the COVID pandemic, the Michigan Department of Corrections initiated policies that restricted or prohibited in-person visits with inmates by their attorneys. In some instances, remote video access was allowed. Other times, access was limited to telephone contact. Those visitation policies were not applied consistently among defense lawyers. Plaintiffs Derrick Crosby and Eric Lewis were inmates serving prison sentences in MDOC custody when they filed their complaint alleging that the MDOC had adopted a policy that interferes with their access to counsel in pending criminal cases that are unrelated to their current incarceration. That policy does not allow prisoners and attorneys access to Zoom videoconferencing technology for consultation with counsel on pending criminal matters. However, the MDOC does permit such Zoom access to convicted prisoners represented by public defenders and by court-appointed attorneys representing convicted inmates on appeal. The plaintiffs alleged that the MDOC's Zoom policies violated their right to due process by depriving them of access to counsel.

After discovery closed, the parties filed cross motions for summary judgment. The plaintiffs have abandoned their claims for damages and seek only equitable relief. At oral argument, the Court learned that the plaintiffs' pending criminal cases have resolved and that the MDOC was allowing in-person visits again by attorneys. The Court ordered supplemental briefs on the question of justiciability, which have been filed. It is apparent now that the dispute is moot and that the Court cannot issue any order that would provide relief that addresses the plaintiffs' remaining claims. The Court therefore will dismiss the case without prejudice.

I.

A.

Plaintiff Derrick Crosby is a prisoner in MDOC custody housed at the Saginaw Correctional Facility. Attorney Dionne Webster-Cox began representing Crosby sometime after he was charged with unarmed robbery in August 2019. Because Crosby pleaded guilty to unrelated offenses in January 2020, he already was in custody at the Saginaw Correctional Facility serving a prison sentence when he began preparing for trial on the unarmed robbery charge.

On May 14, 2021, Webster-Cox emailed Tracey Raquepaw at the Saginaw Correctional Facility to request a Zoom meeting with Crosby to show him "hours of videos" in preparation for a pretrial hearing. Raquepaw responded denying the request. "We do not allow Zoom meetings with prisoners and attorneys (we can with courts and SADO [State Appellate Defender Office] attorneys only)," Raquepaw wrote. Emails, ECF No. 1, PageID.21. Instead, she offered to "set up a [sic] unmonitored telephone call."

Webster-Cox therefore contacted Michigan's Third Judicial Circuit court on June 1, 2021 to ask for assistance. Because the MDOC also permitted courts to use Zoom, the court had offered to allow Webster-Cox meet with Crosby before the hearing started. But Webster-Cox found this solution also to be inadequate, both because it would not allow for advance preparation and due to

the quantity of evidence she wished to view with Crosby. When the Third Circuit asked the MDOC if there was any other way for Webster-Cox to meet with Crosby via Zoom, the MDOC responded that it "does not allow attorneys to meet with inmates over zoom." *Id.* at PageID.20.

Other MDOC officials confirmed the policy to Webster-Cox. On June 4, 2021, Saginaw Record Office Supervisor Kendra Burton provided Webster-Cox with the following information from Records Administrator Alanna Schnell:

> Video Conference is only allowed through the courts and SADO. Private attorneys at this time can only use telephone, in person visits and now can use video visitation. Facilities do not have the resources at this time to take on scheduling of polycom equipment for private attorneys and MDOC leadership has not authorized the use of polycom for private attorneys.

*Id.* at PageID.18. Schnell clarified that private attorneys could schedule video visits "through GTL," but that such visits "are not confidential." *Ibid.* To utilize non-Zoom video technology, attorneys would need to "do an initial visit through GTL then follow up with a confidential telephone conference." *Ibid.* Burton nevertheless asked Webster-Cox if she would like to set up a video visit, noting that "[u]nfortunately" Zoom access "is something that can not [*sic*] be resolved at a facility level." *Ibid.* Webster-Cox then requested two video meetings, and Burton provided her a link she could use to schedule non-Zoom video sessions. The link did not work, however, because Webster-Cox was not approved in the video visitation system. Raquepaw therefore forwarded Webster-Cox's request for non-Zoom video meetings to Assistant Deputy Carolle Walker, reiterating that "attorneys cannot schedule Zoom attorney visits with prisoner clients" and that the non-Zoom video meeting would be monitored. Walker later stated in a declaration that GTL visits are ordinarily used for visits with friends and family, and that multiple GTL visits successfully are held on a daily basis.

During her representation, Webster-Cox had numerous phone calls with Crosby. However, Webster-Cox has not met with Crosby in person or by video since 2019. Nor has she since requested an in-person visit. And she never mailed or attempted to mail video discovery to Crosby.

Since the complaint was filed, plaintiff Derrick Crosby pleaded guilty to an unarmed robbery charge on November 17, 2021. He never reviewed the security camera video discovery relevant to the unarmed robbery charge before he entered his guilty plea. On March 17, 2022, he was sentenced to a term of 10 months and 3 days to 30 years in custody. Crosby remains in custody at the Saginaw Correctional Facility. However, a new warden took over for defendant Gary Miniard at that institution in June 2022.

B.

When he filed the complaint in this case, plaintiff Eric Lewis was a prisoner in MDOC custody housed at the Macomb Correctional Facility. Attorney Webster-Cox began representing Lewis in February or March 2020 after he was charged with new theft crimes. Lewis had entered MDOC custody on December 4, 2019 to serve an unrelated criminal sentence. Lewis had been arraigned on charges of first and second-degree retail fraud and organized retail crime on January 29, 2020.

The discovery for Lewis's theft case included photographs and videos. As of August 2022, Lewis had not reviewed any of video footage or any color still photographs or receive any such discovery by mail. And he had not met with Webster-Cox in person or by video to review discovery or otherwise. Lewis testified that he would not allow Webster-Cox to mail him discovery because he did not want any discovery ever to be in the MDOC's possession, and it would not be helpful for him independently to review discovery then discuss it with Webster-Cox by phone.

Webster-Cox testified that she has never attempted to meet with Lewis in person and did not even know whether the Macomb Correctional Facility permitted in-person meetings with counsel. However, she repeatedly has worked with MDOC officials to arrange to speak with Lewis by phone.

Lewis's theft case eventually was scheduled for trial on October 17, 2022 in the Wayne County, Michigan circuit court; however, the proceeding twice was adjourned and rescheduled. Because the MDOC never received a writ from Wayne County for the trial, and because Lewis's security level had decreased, the MDOC transferred Lewis from the Macomb Correctional Facility to the Cooper Street Correctional Facility on October 6, 2022. On November 17, 2022, the retail fraud and crime charges against Lewis were dismissed without prejudice.

Lewis contends that "the MDOC was locked down in late September 2022," which prevented Webster-Cox from meeting with him to prepare for his scheduled trial. However, the defendants attest that the Cooper Street Correctional Facility accommodated Webster-Cox's request for an in-person visit with Lewis on October 11, 2022. They say that Webster-Cox was permitted to bring a laptop, case files, and a thumb drive into the facility, which she used to review video discovery with Lewis in person.

C.

The MDOC says that before the onset of the COVID-19 pandemic, it provided video access to courts and certain attorneys through its secure Polycom videoconferencing system. The MDOC granted priority of access first, to courts for hearings; second, to the parole board for hearings; and third, to "Transition Team/Case Management encounters, State Appellate Defender Office/Michigan Appellate Assigned Counsel System, and other related matters from outside

authorized agencies." Apr. 2019 Memo, ECF No. 57-2, PageID.711. The Macomb and Saginaw Correctional Facilities each have two active Polycom rooms.

After the onset of the pandemic, the MDOC began to expand use of and access to its Polycom system. That was a direct reaction to an administrative order requiring Michigan trial courts to maximize the use of videoconferencing technology, *see* AO No. 2020-1, ECF No. 57-2, PageID.716, and, later, to Michigan Court Rule 2.407(G), which, as amended July 26, 2021, stated that "trial courts are required to use remote participation technology (videoconferencing under this rule or telephone conferencing under MCR 2.406) to the greatest extent possible." (Michigan Court Rule 2.407 since has been amended again to permit courts to "determine the manner and extent of the use of videoconferencing technology." *See* MCR 2.407(1), effective Sept. 9, 2022, and Staff Comment to 2022 Amendment.)

Eventually, the MDOC implemented a new statewide Operating Procedure for Video and Telephone Court Proceedings, which went into effect on March 7, 2022. Although the procedure maintained the same order of preference for scheduling video proceedings, it also established a procedure for processing video conferencing requests and assigned specific roles to agencies and staff. And it imposed certain security requirements, establishing that "[f]or courts/agencies to connect to the MDOC Polycom equipment IP addresses, the agency must have proper firewall permission to access," as determined by Central Records Administration staff. Operating Procedure 02.01.102 at ¶ G, ECF No. 57-2, PageID.713-14.

As part of its videoconferencing expansion, the MDOC began permitting Michigan trial courts and SADO attorneys to access Zoom through its Polycom system. However, it chose not to extend the same access to private attorneys. Alanna Schnell, a MDOC Records Administrator, explained in a sworn declaration the rationale for this choice. First, scheduling Zoom visits is

time-intensive, requiring the MDOC to commit a full-time staff member to fielding SADO attorney requests for video visits. In July 2022 alone, the MDOC received 380 Zoom scheduling requests from SADO or Michigan Appellate Assigned Counsel System (MAACS) attorneys and sent or received 1,358 related emails confirming dates and equipment access with counsel and MDOC personnel. Second, the MDOC knows the identity and qualifications of each SADO attorney, because SADO verifies the background of every attorney on the MAACS roster. To apply to be an attorney on the roster, applicants must provide their name, bar number, address, phone number, email address, attorney disciplinary information, and two references. State law also requires SADO attorneys to be licensed to practice law in Michigan and classifies SADO attorneys as "court employees." Mich. Comp. Laws § 780.714. The MDOC believes, therefore, that it safely can permit SADO attorneys to schedule Zoom visits without any detriment to institutional security and without expending any additional resources to verify attorneys' identities and qualifications. Schnell states that verification is necessary to prevent individuals with nefarious intent from scheduling private meetings with prisoners, as well as to comply with MDOC regulations excluding attorneys related to prisoners by blood or marriage from visiting without first being placed on a prisoner's approved visitor list.

As a result of the MDOC's Zoom policy, SADO attorneys can use Zoom to review discovery with their clients, but other attorneys cannot. The MDOC explains that prisoners represented by private counsel instead now can meet with their attorneys in person. And as a general matter, the MDOC permits prisoners to possess video discovery and bring it with them to meet with counsel; the MDOC will set up a DVD player in an attorney-client visiting room upon request. During the COVID-19 pandemic, however, the Saginaw and Macomb Correctional Facilities did not permit in-person attorney visits during lockdowns or isolation-status events.

Thus, during much if not all of the period between March 2020 and February 2022, prisoners' only other means of reviewing discovery with counsel was by phone or sometimes by non-Zoom video link. Attorneys could make arrangements to send video discovery to a prisoner's facility by mail, then schedule a later phone or non-Zoom video call to contemporaneously review said discovery with their clients. However, it appears that such arrangements rarely were made: Mona Golson, the Litigation Coordinator at the Macomb Correction Facility, does not recall ever receiving a request from any attorney to review discovery with a prisoner while the facility was on COVID-19 lockdown status.

II.

Crosby and Lewis alleged in their complaint against the MDOC director and the two wardens of their respective prisons via 42 U.S.C. § 1983 that the MDOC's policies of "deprivation of right to access to an attorney" violated their rights under the Fourteenth Amendment to due process and equal protection. They alleged that the lack of access to Zoom to review evidence caused an undue delay in the plaintiffs' ability to make well-informed decisions as to whether to proceed to trial or make a plea. And they ask for a declaration that the policy is unconstitutional and an order enjoining its further implementation.

At this point in the case, however, there is nothing the Court can do to provide these plaintiffs any meaningful relief. There are two reasons for this: first, they no longer have any pending criminal cases or any need to meet with counsel to prepare for trial or a hearing; and second, the MDOC has lifted its restrictions against in-person attorney visits, so access to counsel has been restored.

Federal courts' authority to adjudicate cases is limited "to actual controversies so that the judicial process is not transformed into 'a vehicle for the vindication of the value interests of

concerned bystanders.'" *Coal Operators & Assocs., Inc. v. Babbitt*, 291 F.3d 912, 915-16 (6th Cir. 2002) (quoting *Valley Forge Christian College v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 473 (1982)). Under Article III of the Constitution, a plaintiff seeking to invoke the power of a federal court must demonstrate an injury in fact. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (stating that a plaintiff also must show that the injury is "traceable" to the defendant's conduct, and the injury likely will be "redressed by a favorable decision"). "To establish an injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Ibid.* "A 'concrete' injury must be '*de facto*'; that is, *it must actually exist*." *Ibid.* (emphasis added).

If, during the pendency of a case, an event occurs that makes it impossible for a court to grant any relief to the prevailing party, the case must be dismissed. *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992); *Edwards v. Dewalt*, 681 F.3d 780, 788 (6th Cir. 2012). That is because under Article III, "a justiciable case or controversy must remain 'extant at all stages of review, not merely at the time the complaint is filed.'" *United States v. Juvenile Male*, 564 U.S. 932, 936 (2011) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997)). The Court "lacks jurisdiction to consider any case or issue that has 'lost its character as a present, live controversy' and thereby becomes moot." *Demis v. Sniezek*, 558 F.3d 508, 512 (6th Cir. 2009) (citing *Hall v. Beals*, 396 U.S. 45, 48 (1969)); *see also Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) ("Mootness has been described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation

(standing) must continue throughout its existence (mootness).") (quotation marks omitted). "Because the exercise of judicial power under Article III of the Constitution depends on the existence of a live case or controversy, mootness is a jurisdictional question." *Demis*, 558 F.3d at 512 (citing *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)).

The plaintiffs' claims plainly are moot. They ask for an injunction that would order the MDOC to change its Zoom policy to permit them to meet with counsel over Zoom to review discovery relevant to their pending criminal cases. But their criminal cases since have resolved, negating the plaintiffs' need to review discovery. The Court therefore cannot "grant any effectual relief" to the plaintiffs. *Mokdad v. Sessions*, 876 F.3d 167, 169 (6th Cir. 2017) (quoting *Fialka-Feldman v. Oakland Univ. Bd. of Trs.*, 639 F.3d 711, 713 (6th Cir. 2011) (finding moot university's appeal of an order to provide a student with housing because the student completed his university program during the pendency of the appeal)); *see also Fredette v. Hemingway*, 65 F. App'x 929, 931 (6th Cir. 2003) (finding moot a suit for injunctive relief preventing a prisoner from being transferred to state custody, where the plaintiff was transferred to state custody during the pendency of the litigation).

The plaintiffs invoke the "capable of repetition, yet evading review" exception to the mootness doctrine. That exception applies when "(1) the challenged action is too short in duration to be fully litigated prior to its cessation or expiration and (2) there is a reasonable expectation or a demonstrated probability that the controversy will recur." *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 584 (6th Cir. 2006) (citing *Honig v. Doe*, 484 U.S. 305, 318-19 n.6 (1988)). The first element is satisfied to the extent that the plaintiffs' state-court plea and trial deadlines passed before the resolution of this civil case. The plaintiffs stumble on the second

requirement, however, because they have not demonstrated that the MDOC is likely to reimpose the lockdowns that necessitated access to Zoom meetings with counsel.

Cases like this one, which are based on a "once-in-a-lifetime global pandemic," present "'a unique factual situation.'" *See Thompson v. DeWine*, 7 F.4th 521, 526 (6th Cir. 2021) (quoting *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 560 (6th Cir. 2021)), *cert. denied*, 142 S. Ct. 1233 (2022). Acknowledging this reality, the Sixth Circuit repeatedly has dismissed concerns that "a future pandemic could wreak similar havoc," dismissing as moot challenges to rescinded regulations that were imposed in response to the COVID-19 pandemic. *Ibid.* (collecting cases). Most recently, the court of appeals found moot a challenge to a statewide mask policy imposed at the start of the COVID-19 pandemic, reasoning that, because the mandate "was a product of the pandemic's early stages . . . [w]e are unlikely to see this mandate in a similar form again." *Resurrection School v. Hertel*, 35 F.4th 524, 530 (6th Cir. 2022) (*en banc*), *cert. denied*, 143 S. Ct. 372 (2022).

So too here. "[T]he relevant circumstances have changed dramatically" compared to when the plaintiffs filed their complaint and the defendants' filed their first two dispositive motions. *Id*. at 529. The MDOC no longer imposes a blanket ban on in-person visits. And, thanks to widespread vaccinations and treatments, "the COVID-19 pandemic is unlikely to pose a serious threat" in the future, and so "[t]here is not a reasonable expectation" that plaintiffs "will face the same burdens" that they did in 2020 and 2021. *Hargett*, 2 F.4th at 560; *see also Speer v. City of Oregon*, 847 F.2d 310, 312 n.3 (6th Cir. 1988) (holding that plaintiffs "cannot avoid mootness by engaging in speculation that at some point in the future" certain events may occur). To the contrary, the alleged violation — deprivation of access to counsel — is unlikely to recur because

the plaintiffs long have been able to meet with counsel in person. Plaintiff Lewis even met with counsel in person before his scheduled trial date.

The plaintiffs complain, though, that the MDOC continues to defend its uneven Zoom access policy. That may be so, but it is irrelevant to this discussion, as long as in-person prison visits are allowed. The focus of the plaintiffs' constitutional claim is on access to counsel, not on the convenience technology may offer attorneys who represent incarcerated defendants.

The claims presented in the complaint are no longer justiciable and must be dismissed as moot. The dismissal will be without prejudice. *Revere v. Wilmington Fin.*, 406 F. App'x 936, 937 (6th Cir. 2011) ("Dismissal for lack of subject-matter jurisdiction should normally be without prejudice, since by definition the court lacks power to reach the merits of the case.") (citing *Ernst v. Rising*, 427 F.3d 351, 366 (6th Cir. 2005)).

### III.

Both parties filed motions for summary judgment on the merits. However, because the case is moot, the Court no longer has jurisdiction to adjudicate the merits of the claims or defenses.

Accordingly, it is **ORDERED** that the defendants' and the plaintiffs' motions for summary judgment (ECF No. 57, 58) are **DISMISSED**.

It is further **ORDERED** that the case is **DISMISSED WITHOUT PREJUDICE**.

s/David M. Lawson<br>DAVID M. LAWSON<br>United States District Judge

Dated: January 23, 2023